Tommie PERDUE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–SC–0505–MR.

Supreme Court of Kentucky.

Aug. 22, 2002.

---

50. *Id.* at 438 (emphasis added).

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler III, Attorney General of Kentucky, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellee.

JOHNSTONE, Justice.

The main issue in this case is whether Appellant's right to a speedy sentencing under RCr 11.02 and the U.S. Constitution was violated by a fifty-four (54) month delay after Perdue's sentence was reversed and his case remanded for a new sentencing hearing. Because the delay did not prejudice Perdue, we conclude that the rule was not violated and affirm the trial court.

Perdue was convicted of complicity to arson and complicity to commit murder and was sentenced to death. *Perdue v. Commonwealth,* Ky., 916 S.W.2d 148 (1995), *cert. denied,* 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). On appeal, we affirmed his conviction, but reversed his sentence and remanded his case for a new sentencing hearing. *Id.* at 170. The new sentencing hearing was never held. Rather, about fifty-four months after the case was remanded, Perdue was sentenced to two consecutive twenty-five year terms pursuant to an agreement he reached with the Commonwealth. The agreement expressly reserved Perdue's right to appeal the denial of his motion for a new trial, which was based on allegations of juror misconduct.

On appeal, Perdue argues that the trial court erred in denying his new trial motion and that the lengthy delay in sentencing him violated his right to speedy sentencing under the Sixth Amendment's Speedy Trial Clause and RCr 11.02, which provides in pertinent part that "[s]entence shall be imposed without unreasonable delay."

## I. Speedy Sentencing

In *Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393, 399 (1957), the U.S. Supreme Court assumed for the sake of argument that sentencing was "part of the trial for purposes of the Sixth Amendment." Taking a cue from *Pollard,* a number of state and federal appellate courts either have held or have assumed that the Speedy Trial Clause of the Sixth Amendment applies to sentencing or re-sentencing in a criminal case. *See generally* Susan A. Thomas, annot., *"When Does Delay in Imposing Sentence Violate Speedy Trial Provision,"* 86 A.L.R.4th 340, 1991 WL 741605 (Lawyers Coop.1991). The weight of this authority is highly persuasive and holds that a defendant has a right to a speedy trial

and to a speedy sentencing under the Sixth Amendment to the U.S. Constitution.

■ A speedy-sentencing violation is analyzed using the familiar speedy trial balancing factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See, e.g., United States v. Juvenile Male*, 939 F.2d 321, 325 at n. 6 (6th Cir.1991) (citing cases from all other federal circuits that have considered the issue). These factors are the length of delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d. at 117. While the factors are the same, they are balanced differently in a speedy sentencing case than they are in a speedy trial case because most of the interests protected by the Speedy Trial Clause are not implicated in a post-conviction situation.

■ The Sixth Amendment's speedy trial guarantee prevents oppressive pretrial incarceration, minimizes the defendant's anxiety and concerns, and limits the possibility that the defense will be impaired by delay. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d. at 118. Once the defendant has been convicted, these concerns are greatly reduced or are eliminated altogether. *Perez v. Sullivan*, 793 F.2d 249, 256 (10th Cir.1986). Thus, in a post-conviction situation the showing of prejudice dominates *Barker*'s four-part balancing test and only in the rarest of circumstances will a speedy-sentencing violation be found without a showing of prejudice. *Id.* Likewise, prejudice is the dominant consideration in determining whether there has been "unreasonable delay" in sentencing under RCr 11.02. *See Commonwealth v. Tiryung*, Ky., 709 S.W.2d 454, 456 (1986).

To show prejudice, Perdue claims that the delay in his sentencing prevented him from exercising his right to appeal under Section 115 of the Kentucky Constitution. Additionally, he contends that the delay prevented him from collaterally attacking his conviction under state and federal law.

**A. Impairment of the Right of Appeal**

■ In a case where there is a significant delay in the imposition of an original sentence from a conviction, the subsequent impairment of a defendant's right to appeal his conviction and sentence can result in a denial of due process that prejudices a defendant:

[While] the Constitution does not require a state to provide a system of appeals, ... if a state chooses to do so, the appeal, too, must accord with the basic requirements of due process. *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) ("[I]f a State has created appellate courts as 'an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution.") (quoting *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956)). Implicit in this conclusion is the idea that the enactment of an appellate system necessarily "alter[s] the balance between the layers of adjudication in a constitutionally significant manner." Marc M. Arkin, *Speedy Criminal Appeal: A Right Without a Remedy*, 74 Minn. L.Rev. 437, 459 (1990). That is, the introduction of a second tier of adjudication unavoidably affects the operation and significance of the first tier. For this reason, due process places constraints on an appeal even if it does not require an appeal in the first place. The appeal forms an "integral" and inextricable part of the procedures for determining whether a

defendant should be deprived of his life, liberty, or property. *United States v. Smith,* 94 F.3d 204, 207 (6th Cir.1996).

 In the case of a delay in re-sentencing in which the death penalty is not imposed, the appeal from the new sentence no longer concerns the Commonwealth's power to deprive a defendant of his or her liberty. Rather, the appeal only concerns the duration, if any, of the deprivation. While a defendant has "no substantive right to a particular sentence within the range authorized by statute," he does have a "legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393, 402 (1977). Thus, similar to an appeal from a criminal conviction, an appeal from a sentencing hearing is an integral part of the procedure for determining the duration of the deprivation of a defendant's liberty. Therefore, impairment of the right to appeal a sentencing determination could prejudice a defendant by denying him due process of law. But not so in this case.

 Perdue's new sentence was imposed pursuant to a plea agreement he reached with the Commonwealth. Thus, there is no procedure to review. Moreover, Perdue does not argue that the agreement was invalid. Therefore, the delay in his right to appeal his new sentence did not prejudice Perdue by denying him due process of law.

## B. Impairment of Collateral Attack

 Unlike an appeal from a criminal conviction, a collateral attack is not part of the procedure used to assure that a defendant is not deprived of life, liberty, or property without due process of law. *Pennsylvania v. Finley,* 481 U.S. 551, 556,

107 S.Ct. 1990, 1994, 95 L.Ed.2d 539, 547 (1987). Consequently, delay in the ability to file a collateral attack, in and of itself, does not raise the specter of inherent prejudice as does delay in a defendant's ability to file an appeal as a matter of right. Rather, whether a defendant is prejudiced by an impairment of the right to collaterally attack a conviction rests with the merits of the proposed collateral attack itself. In this case, Perdue has not provided us with his intended collateral attack issues and arguments save possibly the juror misconduct issue. But this issue does not have sufficient merit to show that Perdue was prejudiced by any delay in his ability to collaterally attack his conviction.

## II. Juror Misconduct

 During October 1994, the Department of Public Advocacy (DPA) sponsored a seminar in which local citizens were recruited to serve as mock jurors to assist attorneys participating in the seminar. According to the affidavits of DPA attorneys who attended the seminar, one of the mock jurors, a Mr. Kelly, revealed that he had been a member of the jury panel that tried Perdue's case. Further, Mr. Kelly revealed that, while in a recess during the guilt phase of Perdue's trial, he had performed an independent test to check the validity of Perdue's alibi defense. Apparently, this test consisted of driving between two different locations in order to determine the time that such a drive would take. The test caused Mr. Kelly to conclude that Perdue had not testified truthfully as to the time it took him to drive from one of the locations to the other.

Based on the above facts, Perdue moved for a new trial under RCr 10.02. The trial court denied the motion because it was not timely filed under RCr 10.06. In so doing, the trial court noted that over thirty (30) months had passed since the defense had first learned of Mr. Kelly's statements at the DPA seminar. Additionally, the trial

court noted that, because Perdue was not convicted of being an "immediate actor" in the murder and arson, any alibi defense concerning Perdue's whereabouts at these crimes was not relevant to the jury's finding of guilt. Further, the trial court concluded that Perdue was precluded from attacking his conviction with Mr. Kelly's statements under RCr 10.04, which provides, a "juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." Despite Perdue's arguments to the contrary, we cannot say that the trial court abused its discretion in denying the motion. *See Carwile v. Commonwealth*, Ky. App., 694 S.W.2d 469, 470 (1985). Nor can we say that any delay in the ability to collaterally attack his conviction on the basis of the juror misconduct issue, as presented here, has prejudiced Perdue.

There is little to support a conclusion that Perdue was prejudiced by Mr. Kelly's test. Perdue's convictions were based on proof that he "brokered, or arranged for the victim's murder in exchange for money." *Perdue*, 916 S.W.2d at 153. Perdue was sentenced to death even though he "was neither an immediate actor in the victim's death *nor was he even present at the scene of the victim's murder.*" *Id.* (emphasis added). Thus, it is difficult to see how the test, which apparently contradicted Perdue's testimony as to where he was at the time of the arson and murder, affected the jury's verdict of guilt or was relevant to the evidence introduced against him.

For the reasons set forth above, we affirm the judgment of the Russell Circuit Court.

All concur.