The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Roy Robert RIOS, Defendant–Appellant.

No. 99CA2083.

Colorado Court of Appeals, Div. V.

Dec. 20, 2001.

Certiorari Denied April 8, 2002. *

---

* Justice COATS does not participate.

Ken Salazar, Attorney General, Anthony J. Navarro, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Anne Whalen Gill, P.C., Anne Whalen Gill, Greenwood Village, CO, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Roy Robert Rios, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a schedule IV controlled substance (diazepam) and finding that he was a special offender based on his possession of a firearm during the commission of the offense. Defendant also challenges the sentence imposed. We affirm the judgment, vacate the sentence, and remand the case for correction of the mittimus.

Defendant was stopped by police officers investigating a report that two men had left a taxi without paying the fare. When the police discovered drugs and drug paraphernalia in a cookie tin defendant was carrying, defendant fled. The police apprehended him a few minutes later, found a magazine for a 9 mm pistol in his pocket, and later found the pistol nearby.

I.

Defendant contends that the trial court abused its discretion in denying his motion to suppress evidence seized from the cookie tin. In a related contention, he argues that the court erred in declining to reconsider its suppression ruling based on allegations that his original trial counsel had been ineffective at the suppression hearing. We disagree with both contentions.

A.

In reviewing a trial court's denial of a motion to suppress, we defer to that court's factual findings and reverse only where its conclusions are unsupported by its evidentiary findings or where it applied an erroneous legal standard. *Petersen v. People*, 939 P.2d 824 (Colo.1997); *People v. Trusty*, —— P.3d ——, 2001 WL 1381070 (Colo.App. No. 00CA0470, Nov. 8, 2001).

A trial court must suppress evidence obtained as a result of an unreasonable search or seizure. Warrantless searches and seizures are per se unreasonable unless they fall within an established exception to the warrant requirement. One such exception is for searches incident to lawful arrests. *People v. Blackmon*, 20 P.3d 1215 (Colo.App. 2000).

Arrests fall into two categories: custodial and noncustodial. A custodial arrest refers to a police officer's seizure of a person for the purpose of taking that person to the station house for booking procedures and the filing of criminal charges. To justify such an arrest, the officer must have probable cause to believe that the person arrested has committed a criminal offense. *People v. Bischofberger*, 724 P.2d 660 (Colo.1986); *People v. Blackmon, supra.*

A custodial arrest is prohibited if the applicable statute mandates issuance of a notice or summons and provides for release upon the signing of a promise to appear. In such circumstances, the arrest is a noncustodial arrest, made on probable cause but involving only a temporary detention of the suspect pending issuance of the notice or

summons. *People v. Bland,* 884 P.2d 312 (Colo.1994).

■ A search incident to a noncustodial arrest is limited to a pat-down for weapons and a search for instrumentalities or evidence of the specific crime for which the officer had probable cause to make the arrest. *People v. Bland, supra.* In contrast, the scope of a search incident to a lawful custodial arrest is quite broad. The search need not be limited to a mere pat-down of the arrestee's outer clothing, but may extend to pockets and other containers, open or closed, found on the person of the arrestee or within his or her immediate reach. *People v. Bischofberger, supra.*

■ If the police officer had reasonable grounds before the search to make an arrest, the search does not become unreasonable simply because the defendant was not yet under arrest at the time it was conducted. *See People v. Barrientos,* 956 P.2d 634 (Colo. App.1997).

■ At the suppression hearing in this case, a police officer testified that the taxi driver who had called the police pointed out defendant and another man in an alley, identifying them as the individuals who had left the taxi without paying. The officers stopped the men and asked for identification. Defendant told them he had no identification. The officer saw that defendant was holding a cookie tin and suspected that he might have identification or a weapon in the tin. The officer took the tin, opened it, and saw marijuana, pills, syringes, and a pipe.

Defendant testified at the hearing that he told the officers when they stopped him that he had been in the taxi.

The evidence at the suppression hearing amply supports the trial court's finding that, at the time the officers took the tin from defendant, they had probable cause to arrest him. Defendant, however, argues that, even if the police had a reasonable basis for detaining him, the offense they were investigating was so minor that the detention can be characterized as no more than a noncustodial arrest and that the search of the cookie tin was beyond the scope of a permissible search

incident to a noncustodial arrest. We do not agree.

■ Although the amount of the cab fare may have been small, defendant was nevertheless subject to prosecution for theft if he intended to deprive the taxi driver permanently of the use or benefit of the fare. *See* § 18–4–401(1)(a), C.R.S.2001; *see also* § 18–4–401(2)(a), C.R.S.2001 (theft is a class three misdemeanor if the value of the thing involved is less than $100). There is nothing in the theft statute that mandates the issuance of a notice or summons or otherwise prohibits a custodial arrest even for a minor theft offense. *See People v. Bland, supra.*

■ Thus, the arrest for which probable cause existed was a custodial arrest. The search of the tin did not exceed the permissible scope of a search incident to a custodial arrest. *See People v. Bischofberger, supra.* Therefore, the trial court did not abuse its discretion in denying defendant's motion to suppress.

## B.

We also do not agree with defendant that the trial court was required to reconsider its suppression ruling based on a motion, filed by new defense counsel appointed at defendant's request, alleging that the denial of the initial motion to suppress was attributable to deficient performance by defendant's original counsel.

To establish ineffective assistance of counsel, a defendant must show that defense counsel's performance fell below the range of competence demanded of attorneys in criminal cases and that the deficient performance prejudiced the defense. To establish prejudice, the defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. People,* 871 P.2d 769 (Colo.1994).

■ Here, defendant claimed that his original counsel had been ineffective by failing to impeach the officer's testimony at the suppression hearing with inconsistencies

from the written police report and the testimony at the preliminary hearing. However, there is no reasonable probability that any of the asserted inconsistencies cited by defendant, even if brought out on cross-examination, would have warranted a different ruling on his suppression motion. Thus, because defendant did not show any prejudice from counsel's allegedly deficient performance, the trial court did not err in declining to reconsider its suppression ruling based on ineffective assistance of counsel.

## II.

Defendant next challenges the sentence imposed, contending that a separate sentence should not have been imposed on the special offender count and that imposition of a twenty-year prison sentence was an abuse of discretion. We agree with the first contention, but not the second.

The jury found defendant guilty of possession of a controlled substance (count one) and also found that he possessed a firearm during the commission of that offense (count two). The latter finding established his status as a special offender under § 18–18–407(1)(f), C.R.S.2001. The trial court sentenced defendant to three years on count one and twenty years on count two, the sentences to run concurrently.

### A.

The People concede, and we agree, that only one sentence should have been imposed. The special offender statute does not create a substantive offense but, instead, increases the sentence for the underlying offense. *Vega v. People*, 893 P.2d 107 (Colo. 1995); *People v. Martinez*, 36 P.3d 201 (Colo. App.2001).

A person found to be a special offender is to be sentenced to "at least the minimum term of years within the presumptive range for a class 2 felony but not more than twice the maximum term of years within the presumptive range for a class 2 felony." Section 18–18–407(1), C.R.S.2001. Therefore, because he was found to be a special offender, defendant was subject to a sentence range of eight to forty-eight years on the possession

of a controlled substance conviction, *see* § 18–1–105(1)(a)(V)(A), C.R.S.2001, but should not have received a separate sentence on the special offender count. *See People v. Martinez, supra.*

### B.

However, we do not agree with defendant that the trial court's imposition of a twenty-year prison sentence was an abuse of discretion.

A trial court has broad discretion in imposing a sentence, and its sentence will not be overturned absent a clear abuse of that discretion. In determining a sentence, a trial court is to consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public. The court must state on the record the basic reasons for imposing the sentence. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold it. *People v. Fuller, supra.*

The twenty-year sentence in this case is in the lower half of the eight– to forty-eight-year range required under the special offender statute. In imposing sentence, the trial court cited defendant's criminal record ("two felonies plus a number of misdemeanors and other contacts with law enforcement officers") and expressed its concern that defendant would continue to violate the law unless a substantial sentence was imposed. The court also noted that defendant, a convicted felon, had had a gun in his possession at the time of the incident and that it appeared that he had improperly influenced a witness.

The factors cited by the court were appropriate considerations and are factually supported by the record. Contrary to defendant's contention, the court did not improperly base its sentence on a hearsay statement, made by the district attorney at

the hearing, concerning defendant's alleged intimidation of a witness. The court's reference to witness intimidation appears to have been based on its own observations ("it was obvious to this Court that [the witness] did not want to say anything that would adversely affect [defendant]"), which was not improper. *See People v. Garcia,* 752 P.2d 570 (Colo.1988). Moreover, even if the court was not relying on its own observations and should have disregarded the district attorney's statement, the sentence would nevertheless be upheld based on the legitimate factors on which the court relied. *See People v. Leske,* 957 P.2d 1030 (Colo. 1998)(even assuming trial court relied on an inappropriate consideration, supreme court would uphold sentencing decision because it was supported by other legitimate factors).

### C.

The mittimus indicates that defendant was sentenced to three years in the Department of Corrections (DOC) on the substantive offense of possession of a controlled substance and twenty years on the special offender count. As noted above, defendant could not receive a separate sentence on the special offender count; thus, the sentence on that count must be vacated. However, the record of the sentencing hearing clearly establishes that the trial court intended that defendant was to serve a twenty-year prison term. Therefore, to give effect to the trial court's intended sentence, the mittimus must also be corrected on remand to reflect that the sentence on the substantive offense is twenty years in DOC, plus the five-year mandatory parole term required under § 18–1–105(1)(a)(V)(A).

### III.

Finally, defendant contends that he has been denied his right to a speedy appeal because of an undue delay in preparing and transmitting the trial transcripts needed for his appeal. We disagree.

There is no express constitutional right to a speedy appeal. However, the federal courts have held that extreme delay in processing an appeal may rise to the level of a due process violation. *See, e.g., United States v. Smith,* 94 F.3d 204 (6th Cir.1996); *United States v. Hawkins,* 78 F.3d 348 (8th Cir.1996); *United States v. Luciano–Mosquera,* 63 F.3d 1142 (1st Cir.1995); *Harris v. Champion,* 15 F.3d 1538 (10th Cir.1994); *Simmons v. Reynolds,* 898 F.2d 865 (2d Cir. 1990); *Rheuark v. Shaw,* 628 F.2d 297 (5th Cir.1980); *see also Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)(if state has created appellate courts as integral part of system for adjudicating guilt or innocence, procedures used in deciding appeals must comport with demands of due process and equal protection).

The courts have recognized that an appeal that is inordinately delayed is as much a "meaningless ritual" as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceedings. *United States v. Smith, supra,* 94 F.3d at 207 (quoting *Harris v. Champion, supra,* 15 F.3d at 1558).

■ Among the circumstances that can lead to a deprivation of due process are excessive delays in furnishing transcripts to be used on appeal. *See United States v. Luciano–Mosquera, supra; DeLancy v. Caldwell,* 741 F.2d 1246 (10th Cir.1984); *Rheuark v. Shaw, supra.*

■ In determining whether an appellate delay exceeds the limits of due process, the courts have relied on factors set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for evaluating claims of speedy trial violations. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) whether there was prejudice to the defendant resulting from the delay.

■ If the threshold showing of inordinate delay is not established, it is generally unnecessary to inquire into the remaining *Barker* factors. *Harris v. Champion, supra.*

■ The fourth *Barker* factor, prejudice, is to be assessed in light of the interests that the right to a speedy disposition of an appeal is intended to protect. These interests are: (1) preventing oppressive incarcer-

ation pending appeal; (2) minimizing anxiety and concern of a convicted person awaiting the outcome of an appeal; and (3) limiting the possibility that the grounds for appeal or defenses in case of reversal and retrial might be impaired. *Harris v. Champion, supra; Rheuark v. Shaw, supra.*

We agree with the federal courts that an excessive delay in the resolution of an appeal can give rise to a cognizable claim of denial of due process. We further conclude that the factors set forth in *Barker,* as adapted by *Harris* and *Rheuark,* are appropriate for evaluating such claims. Applying these factors here, we perceive no due process violation in the resolution of defendant's appeal.

As defendant points out, the time for resolution of his appeal will exceed two years. He attributes this primarily to the fact that the last of his requested transcripts were not filed in this court until approximately thirteen months after the notice of appeal was filed.

■ While the amount of time involved in preparing and transmitting the record was longer than it should have been, it does not reach the levels that have been considered excessive or inordinate for purposes of assessing whether a due process violation has occurred. *See DeLancy v. Caldwell, supra* (court reporter's three-year refusal to provide transcript could support defendant's claim for damages under 42 U.S.C. § 1983 if application of *Barker* factors established a due process violation); *United States v. Luciano–Mosquera, supra* (although reporter's failure to provide transcripts for nearly two years was a significant delay, defendant suffered no prejudice and thus did not establish due process violation); *Rheuark v. Shaw, supra* (court would assume without deciding that delay of nearly two years in preparation of transcript exceeded the limits of due process).

Nor does the total time for resolving defendant's appeal rise to the level of "inordinate delay" that has been recognized as necessitating inquiry into the remaining *Barker* factors. *See Simmons v. Reynolds, supra* (six-year delay in resolving appeal, resulting in significant prejudice to defendant, deprived him of his due process right to a speedy appeal); *United States v. Hawkins, supra* (four-year delay by clerk's office in processing appeal was inordinate, but defendant's due process rights were not violated because he was not prejudiced by the delay); *United States v. Smith, supra* (three-year delay in resolving appeal was sufficient to require inquiry into additional *Barker* factors); *but see Harris v. Champion, supra* (delay beyond two years in adjudicating direct criminal appeal is presumptively excessive, thus requiring consideration of additional factors).

We perceive no inordinate delay here. However, even if, as defendant urges, we were to follow *Harris v. Champion, supra,* presume that the delay was excessive, and thus consider the remaining *Barker* factors, defendant's due process claim still would fail.

In regard to the second *Barker* factor-the reason for the delay—we note that at least some of the delay was attributable to defendant's amendment of his original designation of record and his supplemental designation of an additional transcript some nine months after the original designation.

Considering the third *Barker* factor, we conclude that defendant timely asserted his right to a speedy appeal, having raised the issue during the course of his attempts to obtain the transcripts.

However, defendant is unable to show prejudice resulting from the delay, the fourth *Barker* factor, and thus cannot establish a due process violation. *See United States v. Hawkins, supra; United States v. Luciano–Mosquera, supra.*

■ Incarceration is not "oppressive," and thus does not support a claim of prejudice under *Barker,* if the absence of a meritorious appeal establishes that the defendant is rightfully incarcerated. *See United States v. Hawkins, supra.*

■ Here, defendant has not established any basis for reversal of his conviction or reduction of his twenty-year prison term. He is thus rightfully incarcerated, and there will be no retrial at which potential defenses might have been compromised by the delay. Finally, defendant does not even allege that

he has suffered anxiety or concern beyond that normally accompanying a pending appeal. In these circumstances, any delay in the resolution of his appeal has not violated his right to due process.

The judgment of conviction is affirmed. The sentence is vacated, and the case is remanded for correction of the mittimus to reflect that defendant is subject to a single sentence of twenty years imprisonment, plus five years of mandatory parole, for possession of a controlled substance as a special offender.

Judge KAPELKE and Judge CASEBOLT concur.