OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, William Givens, appeals the decision of the Columbiana County Municipal Court finding him guilty of one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. With this appeal, Givens asserts fourteen assignments of error. None of these assignments have merit, so Givens's conviction is affirmed.
 {¶ 2} On February 27, 2007, a complaint was filed against Givens alleging that he knowingly attempted to cause physical harm to another or another's unborn. Givens was brought to trial on these charges on August 7, 2007. At the trial, the victim, Danielle Lissman testified that on the night in question she had been riding in a vehicle with Givens when he became angry and struck her multiple times and later dragged her by her hair after he pulled the car over and she exited the vehicle. She testified that she subsequently jumped out of Givens's vehicle to escape from any further attack. Givens took the stand in his own defense and testified that he did not assault her and that Lissman jumped out of the car in order to seek revenge against Givens. After hearing both versions of the evening's events, the jury found Givens guilty of the assault charge and Givens was convicted by the trial court of the offense and sentenced to five years in prison which he does not challenge on appeal.
 Speedy Trial {¶ 3} As his first assignment of error, Givens argues:
 {¶ 4} "Defendant/Appellant was denied his statutory right to speedy trial."
 {¶ 5} Our review of a trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. State v. Brown (1998),131 Ohio App.3d 387, 391. We accord due deference to the trial court's findings of fact if supported by competent, credible evidence. However, we independently determ ine whether the trial court properly applied the law to the facts of the case. Id. Furthermore, when reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. Brecksville v. Cook (1996), 75 Ohio St.3d 53, 57. *Page 2 
 {¶ 6} Here, Givens was charged with assault in violation of 2903.13(A), a misdemeanor of the first degree. A person charged with a first degree misdemeanor must be brought to trial within ninety days after the person's arrest or the service of summons. R.C. 2945.71(B)(2). Each day the defendant is held in jail in lieu of bail is counted as triple time. R.C. 2945.71(E). However, the day of arrest does not count against the speedy trial time. State v. Turner, 7th Dist. No. 93CA91,2004-Ohio-1545, ¶ 23.
 {¶ 7} Givens was served a summons and was arrested on March 16, 2007. He was incarcerated that same day. Because he was incarcerated from the day of his arrest, the State was required to bring him to trial within thirty days.
 {¶ 8} The clock began to run on March 17, 2007, and continued to run until March 21, 2007, when Givens served the State with a request for discovery. In State v. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, the Ohio Supreme Court held that a defendant's demand for discovery or a bill of particulars is a tolling event per R.C. 2945.72(E). The Court reasoned that "discovery requests by a defendant divert the attention of prosecutors from preparing their case for trial, thus necessitating delay." Id. at 124. Accordingly, the speedy trial clock was tolled until the State's response to this request. In this case, however, the State never formally responded to Givens's request. This could pose an issue if it were not for the additional motion that was filed by Givens.
 {¶ 9} More specifically, on April 13, 2007, Givens filed a motion to modify his bond which was ruled on April 18, 2007, when he was released by the trial court on his own recognizance. This motion constituted another tolling event and therefore the clock stopped running during the pendency of this motion. State v. Findley, 7th Dist. No. 07 MA 53,2008-Ohio-1549 at ¶ 9.
 {¶ 10} While his bond modification motion was pending, Givens filed a motion to dismiss based upon the alleged violation of his right to a speedy trial on April 16, 2007. However, this motion was never ruled upon by the trial court as Givens subsequently waived his rights to a speedy trial on April 18, 2007.
 {¶ 11} Based upon these facts, his assignment of error fails in two respects. First, *Page 3 
the speedy trial clock had only run for four days before Givens made his discovery request. And, second, regardless of whether or not the State responded, the clock was tolled again for five days by his motion to modify bond. Accordingly, at most, only twenty-seven days had passed before he filed his motion to dismiss. Accordingly, Givens's first assignment of error is meritless.
 Complaint Sufficiency {¶ 12} As his second assignment of error, Givens maintains:
 {¶ 13} "The complaint filed herein and upon which Defendant/Appellant was convicted is constitutionally deficient and therefore failed to invoke the jurisdiction of the court thereby rendering the Defendant/Appellant's conviction void."
 {¶ 14} Crim. R. 3 which sets forth the requirements for a proper complaint provides:
 {¶ 15} "The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized to administer oaths."
 {¶ 16} Here, Givens claims that the complaint was insufficient as it did not specifically list the victim's name. However, "[i]t is well recognized that the name of the victim is not required in the indictment when the identity of the victim is not an essential element of the crime." State v. Williams, 8th Dist No. 84894, 2005-Ohio-1866, at ¶ 18; see also State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, at ¶ 27. Although these cases deal with indictments, rather than criminal complaints, the same principles apply. State v. Burgun (1976),49 Ohio App.2d 112, 116-117.
 {¶ 17} The identity of the victim is not an essential element of assault. State v. Anthony (Sept. 30, 1994), 11th Dist. No. 93-L-096. Therefore, there is no requirement that the complaint contain the victim's name. Accordingly, Givens's second assignment of error is meritless.
 Defendant Handcuffed in Jury Presence {¶ 18} As his third assignment of error, Givens argues:
 {¶ 19} "The trial court committed reversible error when it permitted Defendant/Appellant to appear in front of the jury in handcuffs." *Page 4 
 {¶ 20} Givens claims he was denied a fair trial as he appeared before the jury in shackles during voir dire. The State argues that the record does not affirmatively demonstrate that Givens was present in front of the jury during voir dire and whether the jury actually saw him in handcuffs.
 {¶ 21} Just prior to voir dire, the record states:
 {¶ 22} "The Defendant, William A. Givens, appeared. Whereupon, the following proceedings were had:"
 {¶ 23} The trial court then proceeded with the process of voir dire, which began with the introduction of both attorneys and further indicated that "* * * the defendant in this matter is Mr. William Givens. He is seated to the left of his counsel." At the conclusion of voir dire, the trial court excused the jury for a brief recess. After the jurors exited the courtroom, the trial court asked if there were any motions by the parties, at which time defense counsel asks for a separation of witnesses. And then the trial court stated:
 {¶ 24} "At this time there had been a request of defense counsel that the handcuffs be removed from the Defendant; is there any objection of the State?"
 {¶ 25} To which the State responded, "No Your Honor."
 {¶ 26} The Court then instructed the officer to remove the handcuffs from Givens. There is no indication in the record, however, of when counsel made that request. It is incumbent upon a defendant to preserve any objection on the record for purposes of appeal. State v. Grubb
(1986), 28 Ohio St.3d 199, paragraph two of the syllabus. If the defendant fails to do so, then we must presume the regularity of the trial court's proceedings. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Therefore, we can only presume that defense counsel's request occurred just prior to the handcuffs being removed. Givens has waived all but plain error regarding the handcuffs.
 {¶ 27} Plain errors and defects affecting substantial rights may be addressed by this Court even when they were not brought to the attention of the trial court. Crim.R. 52(B). Crim.R. 52(B) places three limitations on the decision of a reviewing court to correct an error despite the absence of a timely objection at trial. State v.Barnes, *Page 5 94 Ohio St.3d 21, 27, 2002-Ohio-68. There must first be an error or deviation from a legal rule. Id., citing State v. Hill,92 Ohio St.3d 191, 200, 2001-Ohio-141. Second, the error must be plain — it must "be an `obvious' defect in the trial proceedings." Barnes,94 Ohio St.3d at 27, citing State v. Sanders, 92 Ohio St.3d 245, 257, 2001-Ohio-189. Finally, the error must have affected substantial rights to the point that the court's error affected the outcome of the trial.Barnes, 94 Ohio St.3d at 27. Plain error is defined as "error but for the occurrence of which it can be said that the outcome of the trial would have clearly been otherwise." State v. Sanders (May 17, 2000), 9th Dist. No. 19783, at 1. The plain error doctrine should be applied sparingly and only when necessary to prevent a clear miscarriage of justice. Id., citing State v. Wolery (1976), 46 Ohio St.2d 316, 327.
 {¶ 28} Here, Givens claims that he was denied a fair trial as he was viewed by the jury while wearing handcuffs. Because the presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant, "no person should be tried while shackled * * * except as a last resort." Illinois v. Allen (1970), 397 U.S. 337,344; see, also, State v. McKnight 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 219.
 {¶ 29} "The placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence. Restraints may also impede the defendant's ability, and thus implicate his Sixth Amendment right, to confer with his counsel and to assist in his defense. Moreover, the use of restraints may `affront * * * the very dignity and decorum of judicial proceedings that the judge[,] [by imposing the restraints, was] seeking to uphold.'" State v. Leonard, 1st Dist. No. C-030492, 2004-Ohio-3323, quoting Allen, 397 U.S. at 344.
 {¶ 30} The Ohio Supreme Court has held that a trial court's decision whether to shackle a defendant will not be reversed on appeal absent an abuse of discretion. State v. Richey (1992), 64 Ohio St.3d 353, 358. The record should reflect the factors upon which the court exercised its discretion. State v. Carter (1977), 53 Ohio App.2d 125, 132. However, "no one should be tried while shackled, absent unusual circumstances."State *Page 6 v. Kidder (1987), 32 Ohio St.3d 279, 285, (citing Allen).
 {¶ 31} Here, it is unclear from the record if Givens actually appeared before the jury in handcuffs or if Givens was possibly seated in such a manner that the handcuffs could not be observed. We could have known that the jury's attention was drawn to the handcuffs for example, if the handcuffs were removed in the presence of the jury. However, this did not occur in this case.
 {¶ 32} Because the record is so unclear, it is impossible for us to determine whether or not an error, in fact, occurred. We are reviewing this assignment for plain error, thus, Givens was required to demonstrate an "obvious" defect in the proceedings. Because he has failed to do so, we presume the regularity of the proceedings below. Therefore, we conclude that Givens's third assignment of error is meritless.
 Discovery Violation {¶ 33} As his fourth assignment of error, Givens asserts:
 {¶ 34} "The trial court erred by permitting the testimony of witnesses, over objection, when the state failed to respond in any way to the Defendant's request for discovery."
 {¶ 35} Givens claims that the State failed to respond in any way to his discovery requests and, therefore, the trial court should have sanctioned the State by not permitting its witnesses to testify.
 {¶ 36} Crim.R. 16(E)(3) governs discovery issues in criminal cases. It provides:
 {¶ 37} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Id.
 {¶ 38} "It is readily apparent that under [Crim.R. 16], the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option. Alternatively, the court may order the *Page 7 
noncomplying party to disclose the material, grant a continuance in the case or make such other order as it deems just under the circumstances. Accordingly, our inquiry is limited to a determination of whether the trial court's action in this case constituted an abuse of discretion."State v. Parson (1983), 6 Ohio St.3d 442, 445.
 {¶ 39} The Parson court discussed a number of factors that are relevant when a criminal defendant challenges the trial court's response to violations of Crim.R. 16: whether the violation was willful or merely negligent; whether the nondisclosed evidence would have helped the defendant; whether defendant requested a continuance in furtherance of obtaining discovery; whether the defendant had actual knowledge of the evidence that was requested in discovery; and whether the defendant was prejudiced by the discovery violation. Id.
 {¶ 40} In this case, Givens did not inform the trial court of the fact that the State had not yet replied to his discovery request until just before the State called its first witness. He was unable to say how he was prejudiced by this, however, since his attorney had been involved in the case and had made "assumptions" about the type of evidence the State would use against Givens. The State offered to agree to a continuance so Givens could receive the discovery he requested, but Givens rejected this offer. After Givens refused to agree to a continuance, the trial court denied his motion to exclude the witnesses.
 {¶ 41} The trial court's decision in this matter was not an abuse of discretion. It could have reasonably appeared to the trial court that Givens was merely trying to buy time. If Givens had an issue with the lack of a response, he could have easily moved to compel discovery prior to trial, rather than waiting until after voir dire to raise this issue for the first time. Accordingly, Givens's fourth assignment of error is meritless.
 Venue {¶ 42} As his fifth assignment of error, Givens states:
 {¶ 43} "The state of Ohio failed to establish any competent, credible evidence as to the proper venue for Defendant/Appellant's trial as there was no competent, credible evidence as to the location of the assault having taken place in Columbiana County, *Page 8 
Ohio."
 {¶ 44} Givens claims that the State failed to prove beyond a reasonable doubt that the assault occurred in Columbiana County. Therefore, Givens believes his conviction must be vacated.
 {¶ 45} Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter, in the county in which the offense is alleged to have been committed. Thus, venue is proper in the county where an offense, or any element thereof, was committed.State v. Headley (1983), 6 Ohio St.3d 475, 477; R.C. 2901.12(A). While venue is not a material element of any crime, it is a fact that must be proven beyond a reasonable doubt. State v. Jalowiec (2001),91 Ohio St.3d 220, 228, citing Headley, 6 Ohio St.3d at 477. Express evidence to establish venue is not necessary if, from all of the facts and circumstances in the case, it is established beyond a reasonable doubt that the crime was committed in the county and state alleged in the indictment. Id.; State v. Gribble (1970), 24 Ohio St.2d 85, 89-90. The trial court has broad discretion to determine the facts that establish venue. State v. Shuttlesworth (1995), 104 Ohio App.3d 281, 286.
 {¶ 46} The relevant portions of the statute dealing with venue, R.C.2901.12, provide:
 {¶ 47} "(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
 {¶ 48} "(B) When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed. * * *
 {¶ 49} "(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the *Page 9 
offender may be tried in any of those jurisdictions."
 {¶ 50} In reviewing whether the State has proved venue beyond a reasonable doubt, appellate courts should apply the sufficiency of the evidence standard of review. State v. Penton (Apr. 7, 1993), 3d Dist. No. 9-91-25. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Smith (1997), 80 Ohio St.3d 89.
 {¶ 51} Givens argues that the police officers could only testify as to where the assault possibly took place and that the victim testified she had no idea where the assault took place. But the record demonstrates otherwise. A deputy testified that he was called out to a home on Riffle Road in Columbiana County. Both his and the victim's testimony revealed that she was assaulted by Givens just prior to jumping out of the car and that she jumped out of the car near the residence. Furthermore, Givens himself testified that they were in Columbiana County when the victim jumped out of his car and ran up to the residence. This evidence establishes that the offense occurred in Columbiana County.
 {¶ 52} Furthermore, even if there were some question about whether these facts were sufficient to prove that the offense took place in Columbiana County, they clearly would prove venue under R.C. 2901.12(G). Therefore, Givens's fifth assignment of error is also meritless.
 Sufficiency of the Evidence/Motion for Acquittal {¶ 53} In his sixth and eight assignments of error, which will be addressed together as they require the same legal analysis, Givens maintains respectively:
 {¶ 54} "The evidence at trial was insufficient to support a conviction."
 {¶ 55} "The trial court erred when it denied Defendant/Appellant's motion for acquittal."
 {¶ 56} As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence". See State v.Thompkins (1997), 78 Ohio St.3d 380, at *Page 10 
paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.") "Sufficiency of the evidence" is ?`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. A Crim.R. 29(A) motion for an acquittal is the vehicle through which a defendant makes a sufficiency of the evidence argument to the trial court. See, e.g.,State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 63-64.
 {¶ 57} The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 58} In this case, Givens was convicted of assault in violation of R.C. 2903.13(A) which states that no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. The State presented evidence supporting this charge by way of testimony of Sergeant Foley, the officer who reported to the scene of the alleged crime, and the victim Danielle Lissman.
 {¶ 59} Sergeant Foley testified that he was called out to a residence on Riffle Road where he encountered the victim. She was shaken up and crying. Her eye was swollen and red, she had a scrape on her left elbow, red marks on her neck, a large scrape on her back, and a bump on her head. The officer testified that Lissman had jumped out of Givens's vehicle to get away from him.
 {¶ 60} When Lissman took the stand she testified that while she was riding with Givens, her boyfriend at the time, he became angry with her and starting calling her names. He then told her that he was going to pull over to the side of the road and rape *Page 11 
her. He then struck her in the chest with the back of his hand. He pulled over and she got out of the car. Givens followed her and grabbed her arm and then grabbed her hair and dragged her from the side of the road. They then got back into the car and continued driving. Lissman testified that he continued to strike her as he drove. They pulled over a second time and Lissman testified that Givens took off all of his clothes but did not remove Lissman's clothes. He then put his clothes back on and began driving again. He then told Lissman that he was going to take her somewhere else, rape her, cut her up, eat her body parts, and throw the rest of her into a ravine. Soon after, Lissman jumped out of the car and ran up to a residence.
 {¶ 61} Viewing these facts in a light most favorable to the State, we conclude that the State sustained its burden of proving beyond a reasonable doubt that Givens assaulted Lissman. Accordingly, Givens's sixth and eighth assignments of error are meritless.
 Manifest Weight {¶ 62} As his seventh assignment of error, Givens argues:
 {¶ 63} "The verdict was against the manifest weight of the evidence."
 {¶ 64} The issue of whether a trial court judgment is against the manifest weight of the evidence was addressed in State v. Thompkins
(1997), 78 Ohio St.3d 380. Thompkins distinguished between sufficiency of the evidence and weight of the evidence: ?`?[Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433; Crim.R. 29(A).
 {¶ 65} Although a court of review may find sufficient evidence to support the verdict, it may also conduct a further review of the manifest weight of the evidence. Id. at 387. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of *Page 12 credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief" (Emphasis in original.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 66} When reviewing a trial court's decision on manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony. Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 67} Here, Givens took the stand in his own defense in an attempt to counter the testimony of Sergeant Foley and Lissman. Givens explained that he picked up Lissman, his girlfriend of five months, and was going to take her back to his place in Columbiana. He told her that he would not be returning to Austintown that evening. He testified that Lissman was planning on doing drugs that evening, but when Givens refused to take her to get drugs, she became hostile. He then testified that Lissman threatened that if he did not do what she wanted him to do, then she was going to have him thrown in jail. Lissman allegedly then began calling him names, threatened to jump out of the car, and shortly thereafter jumped out. Lissman then allegedly began screaming at him that he was going to jail and ran up to one of the houses.
 {¶ 68} We conclude that both versions of what happened in this case are equally plausible and that this is a classic "he said-she said" scenario. In such a case, we cannot say that the jury clearly lost its way in deciding to believe one side of the story over another. Accordingly, Givens's seventh assignment of error is meritless. *Page 13 
 Other Crimes/Wrong Acts Testimony {¶ 69} As his ninth assignment of error, Givens asserts:
 {¶ 70} "Defendant/Appellant was denied a fair trial when the trial court permitted testimony regarding other crimes, wrongs or acts."
 {¶ 71} Givens's claims that he was prejudiced by the admission of testimony from the victim that on the night of the alleged assault, he threatened to rape her, kill her, cut her up, eat her body parts, and dispose of the remainder of her body parts in a ravine. Givens claims he was further prejudiced by the victim's testimony that he attempted to use a credit card that was not his own to purchase gas and cigarettes on the evening in question.
 {¶ 72} Pursuant to Evid.R. 404(B),
 {¶ 73} "(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 74} Notably, trial counsel did not object to this testimony. Thus, we must address the admission of this evidence under a plain error standard of review pursuant to Crim.R. 52(B). To constitute plain error, the error must be obvious on the record, and the error must be so fundamental that it should have been apparent to the trial court without objection. State v. Tichon (1995), 102 Ohio App.3d 758. Appellate courts are not required to recognize plain errors and this discretion is encompassed in the Ohio Supreme Court's instruction that we take notice of plain error ?`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"State v. McKee, 91 Ohio St.3d 292, 299, 2001-Ohio-0041, quotingState v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 75} Although Givens argues that it was improper for the trial court to allow Lissman to testify that Givens threatened to rape her, kill her, cut her up, eat her body parts, and dispose of the remainder of her body parts in a ravine, this testimony clearly *Page 14 
helps establish the fact that Givens intended to cause Lissman physical harm. Thus, this testimony clearly falls within the exception against admitting other bad acts in Evid.R. 404(B). Accordingly, it was not error for the trial court to admit this testimony.
 {¶ 76} Givens also argues that the trial court should have excluded any testimony regarding Givens's alleged misuse of a credit card. However, the testimony at trial showed that this incident may have spurred Givens's assault on Lissman, thereby providing proof of motive. Since proof of motive is another reason why other acts evidence can be admitted, the trial court did not commit an error when admitting this evidence.
 {¶ 77} Finally, neither of the trial court's decisions in this case could have risen to the level of plain error since Givens failed to demonstrate the exceptional circumstances of this case which would require that we recognize plain error. For all of these reasons, Givens's ninth assignment of error is meritless.
 Use of Prior Convictions {¶ 78} As his tenth, eleventh, and twelfth assignments of error, which will be addressed together as they require the analysis of similar facts and law, Givens argues:
 {¶ 79} "The trial court erred when it permitted a prosecutor to make repeated references to Defendant/Appellant's prior convictions both on cross-examination and during closing argument."
 {¶ 80} "The trial court erred in failing to give proper instructions with regard to the evidence of and comments about Defendant/Appellant's prior convictions."
 {¶ 81} "Defendant/Appellant was denied a fair trial due to prosecutorial misconduct."
 {¶ 82} Givens's claims he was prejudiced by the repeated references to his criminal record by the prosecution which he claims was worsened by the trial court's failure to give a limiting instruction regarding these crimes. More specifically, after Givens admitted on direct examination to committing multiple crimes including burglary, possession of drugs, obstruction of justice and receiving stolen property, the prosecution brought up Givens's record multiple times during cross examination, again on re-cross *Page 15 
examination and brought it up yet again multiple times during closing argument. Givens claims it was error for the trial court not to give limiting instructions in this situation. Notably, Givens never requested that a limiting instruction be given.
 {¶ 83} "When evidence which is admissible as to one party or for one purpose but not admissible as to another party of for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." Evid.R. 105.
 {¶ 84} It appears from the rule that a limiting instruction can only be given upon the request of a party, and accordingly, Givens cannot now claim that the trial court erred by not giving the instruction as he has waived this argument per Evid.R. 105. See also State v. Curtis, 3d Dist. No. 9-02-11, 2002-Ohio-5409 (holding that trial court was not required to give limiting instruction permitting use of prior conviction for a violent felony only to prove element of charged offense and not to prove action in conformity with character, where defendant made no request for such an instruction.)
 {¶ 85} With regards to Givens's prosecutorial misconduct claim, Givens did object to the multiple references to his criminal record. Therefore, he did not waive this issue on appeal.
 {¶ 86} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v.Fears (1999), 86 Ohio St.3d 329, 332. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected substantial rights of the appellant. State v. Smith (1984),14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hanna,95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 61, quoting Smith v. Phillips (1982),455 U.S. 209, 219. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.
 {¶ 87} Here, the prosecutor raised Givens's criminal record numerous times to *Page 16 
apparently establish that Givens was a dishonest person. When an accused testifies at trial, Evid.R. 609(A)(2) allows the State to impeach the accused's credibility with evidence that the accused has been convicted of an offense punishable by imprisonment in excess of one year. Thus, the prosecutor was permitted to raise Givens criminal record. Although, arguably, the number of times the prosecutor brought up these crimes seemed to be a bit excessive, the remarks could not be deemed improper as they were used solely for impeachment purposes. Given that this is a "he said-she said" situation, the prosecutor should be able to emphasize the crimes of dishonesty as part of his case against Givens because Givens testified. Accordingly, these assignments of error are meritless.
 Ineffective Assistance {¶ 88} As his thirteenth assignment of error, Givens argues:
 {¶ 89} "Defendant/Appellant was denied a fair trial due to ineffective assistance of counsel."
 {¶ 90} Givens claim is reviewed under the two-part test ofStrickland v. Washington (1984), 466 U.S. 668. "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal,87 Ohio St.3d 378, 388-389, 2000-Ohio-448. When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 91} Givens asserts that trial counsel was ineffective based upon his multiple failures to object to testimony that Givens claims was inadmissible. For example, Givens claims counsel should have objected to Deputy Foley's testimony about where the offense was committed because it was hearsay based on Lissman's statements to the *Page 17 
deputy. However, both the victim and Givens himself provided all the necessary testimony to establish venue, so counsel's failure to object to this testimony did not affect the outcome of the trial.
 {¶ 92} In addition, Givens believes that trial counsel should have objected to the repeated testimony of the victim regarding what Givens claims were improper other acts evidence. As discussed above, the trial court's decision to allow this testimony was not error, so counsel's failure to object to the testimony was not deficient.
 {¶ 93} Givens further claims that counsel was ineffective for failing to ask for a curative or limiting instruction regarding his prior criminal convictions. Arguably, this could have been deemed a strategic decision as counsel could have been attempting to not draw further attention to the criminal convictions. In the present case, given how many times the convictions did come up, it may have been a better practice to have asked for the limiting instruction. However, it appears that counsel's failure to seek such an instruction was neither deficient nor prejudicial since the crimes were admissible as discussed above.
 {¶ 94} Finally, Givens claims that counsel was ineffective for failing to make sure he was unshackled before he was brought before the jury. As discussed above, Givens has not affirmatively demonstrated on appeal that he was shackled in the presence of the jury and therefore we cannot say that counsel was ineffective on this basis. Accordingly, we find Givens's thirteenth assignment of error to be meritless.
 Cumulative Error {¶ 95} As his fourteenth and final assignment of error, Givens maintains:
 {¶ 96} "Defendant/Appellant was denied a fair trial due to the cumulative effect of the errors as set forth herein."
 {¶ 97} Although a particular error might not constitute prejudicial error in and of itself, a conviction may be reversed if the cumulative effect of the errors deprives appellant of a fair trial, despite the fact that each error individually does not constitute cause for reversal. State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. However, the doctrine of cumulative error is not applicable where appellant fails *Page 18 
to establish multiple instances of harmless error during the course of the trial. State v. Gamer (1995), 74 Ohio St.3d 49, 64, 1995-Ohio-0168. A defendant claiming cumulative error must make "a persuasive showing of cumulative error." State v. Sanders, 92 Ohio St.3d 245, 279, 2001-Ohio-0189.
 {¶ 98} We have not found that the trial court committed multiple instances of harmless error. Therefore, we cannot address whether any harmless errors had a cumulative effect. This assignment of error is meritless.
 {¶ 99} Each of Givens's assignments of error is meritless. Accordingly, the judgment of the trial court is affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1